Argued and submitted July 28, reversed and remanded in CA A98055; affirmed in
CA A98078 December 9, 1998, petition for review allowed April 13, 1999
(328 Or 418)

Lorene K. WEBBER,
as personal representative on behalf of the
Estate of Belden R. Webber, deceased,
*Appellant,*

*v.*

Georgene A. OLSEN,
aka Georgene A. Webber,
*Respondent.*

(96-3537-L-1; CA A98055 (Control))

Lorene K. WEBBER,
fka Lorene K. Piper, Kenneth R. Webber,
Stevan G. Webber, Michael T. Webber,
*Appellants,*

*v.*

Georgene A. OLSEN,
fka Georgene A. Webber, and
Anthem Life Insurance Company,
a Texas corporation,
*Respondents.*

(94-1788-E-2; CA A98078)
(Cases Consolidated)
971 P2d 448

Matthew Sutton argued the cause for appellants. With him on the briefs were Douglas J. Richmond and Kellington, Krack, Richmond, Blackhurst & Sutton, LLP.

Timothy E. Brophy argued the cause for respondent. With him on the brief were Todd B. Maddox and Brophy, Mills, Schmor, Gerking & Brophy, LLP.

No appearance for respondent Anthem Life Insurance Company.

Before Landau, Presiding Judge, and Wollheim* and Linder, Judges.

WOLLHEIM, J.

_____

* Wollheim, J., *vice* Riggs, J., resigned.

**WOLLHEIM, J.**

Plaintiffs appeal from the judgment in two consolidated cases, both of which relate to the disposition of the life insurance proceeds payable on the death of Belden R. Webber. Plaintiff Lorene Webber was married to decedent at the time of his death in September 1993. Plaintiffs Kenneth, Stevan and Michael Webber are decedent's sons. Defendant Georgene Olsen is decedent's former wife. In one of these consolidated cases, plaintiffs sought declaratory relief against Olsen and insurer Anthem Life Insurance Company, arguing that they are entitled to the proceeds of a life insurance policy on decedent's life. Olsen counterclaimed for declaratory judgment that she was entitled to the proceeds of the insurance policy. In the other case, plaintiff Lorene Webber, in her capacity as personal representative of decedent's estate, brought a claim for breach of contract on the estate's behalf against defendant. The trial court granted summary judgment for defendants in both cases, and plaintiffs appeal. We review for errors of law and affirm in part and reverse in part.

On review of a summary judgment, we review the facts in the light most favorable to the nonmoving party to determine if the movant is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Decedent was married to defendant from 1961 to 1988. In 1981, when both lived in Oregon, decedent named defendant as the beneficiary of the insurance policy. The insurance policy was provided through decedent's employer, a Washington corporation, and issued by a California insurer.[1] In 1988, decedent and defendant entered into a stipulated judgment of dissolution of marriage in Oregon. The stipulated judgment provided, as a part of their property settlement, that defendant would receive the parties' home in Talent, Oregon, and decedent would maintain defendant as the primary beneficiary of his life insurance policy. The judgment also required defendant to leave the Oregon home to decedent in her will, with the provision that if she sold the home, decedent would be freed of his obligation to name defendant as the primary beneficiary on his life insurance

---

[1] The policy later was acquired by defendant Anthem, a Texas corporation.

policy. Decedent's attorney at the time of the divorce recalled that decedent specifically negotiated the terms of the property settlement as a business decision, that decedent retained no affection for defendant at the time of the dissolution, and that decedent planned to change the beneficiary on his life insurance as soon as he could do so without violating the terms of the stipulated judgment of dissolution. At the time of the dissolution, and at all times thereafter, decedent lived in California.

In 1989, decedent filled out a change of beneficiary form naming plaintiff Lorene Webber as the primary beneficiary under the policy. That form, however, was never mailed and, ultimately, was discovered among decedent's papers in California after his death. The insurance policy required written notice in order to change the designated beneficiary. Also in 1989, decedent had his attorney contact defendant's attorney to ascertain if the home had been sold, but his attorney received no response. In January 1990, decedent's attorney checked to see if a sale of the property had been recorded, and discovered that the property was still in defendant's name. At about that same time, defendant sold the property to a friend but did not inform decedent of the sale and continued to live in the home. The record does not indicate when that sale was recorded. Decedent subsequently saw ads up until the time of his death indicating that the home was for sale, but he was unaware that the new owner, not defendant, had placed it on the market.

In August 1993, decedent executed a will in California, with the assistance of a paralegal, which attempted to bequeath the life insurance proceeds to Lorene, Kenneth, Stevan, and Michael Webber.[2] Several days before his death, when decedent was very ill, he discovered that defendant had sold the Oregon home. Decedent told Lorene Webber at that time that she would receive the life insurance proceeds under his will. Decedent died several days later in Ashland, Oregon.

After decedent's death, plaintiffs initiated this action for declaratory relief, claiming that they had a right to

---

[2] It is undisputed that the execution of the will did not, in fact, effect a change in beneficiary. This fact is relevant only to show decedent's intent.

the proceeds of the insurance policy, based on the completed change of beneficiary form, decedent's will, and the intentions of decedent that they be the beneficiaries of the policy. Defendant counterclaimed for declaratory relief, seeking a declaration that she was entitled to the proceeds of the policy.[3] Plaintiff Lorene Webber, acting as personal representative of decedent's estate, filed a related claim against defendant, alleging that defendant breached the property settlement agreement set forth in the stipulated judgment of dissolution by failing to inform decedent of the sale of the home, thus damaging decedent's estate in the amount of the life insurance proceeds. The trial court consolidated the cases and entered summary judgment in defendant's favor in both cases.

Plaintiffs appealed. Plaintiffs first contend that the trial court erred in applying California law to determine whether decedent should be deemed to have changed the beneficiary of his life insurance policy. Defendant maintains that the trial court properly applied California law. In analyzing a choice of law problem, the first question to be addressed is whether the laws of California and Oregon are actually in conflict. *Lilienthal v. Kaufman*, 239 Or 1, 395 P2d 543 (1964). We conclude that the laws of California and Oregon are in conflict regarding whether plaintiffs have a viable claim to the proceeds of the life insurance policy based on decedent's intent to change beneficiaries.

Under California law, in cases where insurance proceeds have been interpleaded and the dispute is between claimants, an insured must take substantial steps to comply with the insurer's requirements to change beneficiaries on a life insurance policy, and "where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected." *Pimentel v. Conselho Supremo*, 6 Cal 2d 182, 57 P2d 131, 134 (1936).

---

[3] The insurer interpleaded the disputed funds pursuant to ORCP 31, was dismissed from the action pursuant to ORCP 67 B, and is not a party to this appeal.

■ Other California cases make it clear that a decedent's unsuccessful attempt to change the beneficiary by executing of a will, and orally communicating the intent to change beneficiaries, does not reach the level of substantial compliance. In *Moss v. Warren,* 43 Cal App 3d 651, 117 Cal Rptr 796 (1974), the California court addressed a similar situation. Decedent, after her divorce, wanted to substitute her brother for her former spouse as beneficiary of her retirement fund and life insurance. Although she told several people that she had made all the necessary changes, she had completed only the forms needed to change the retirement fund's beneficiaries. *Id.* at 797-98. She also indicated in her will that she wished her brother to receive the life insurance proceeds. *Id.* Nonetheless, the court stated:

> "Although it is true that the making of the holographic will, coupled with the various verbal statements made by Mary Warren, could properly be viewed a clear manifestation of her intent to make a change of beneficiary, such intent, standing alone, did not relieve Mary Warren from the duty to substantially comply with the insurer's rules."

*Id.* at 798-99. *See also Wicktor v. County of Los Angeles*, 141 Cal App 2d 592, 297 P2d 115 (1956) ("mere intention to change the beneficiary of a life insurance policy cannot effect such a change"); *Cook v. Cook*, 17 Cal 2d 639, 111 P2d 322, 329 (1941) (attempting to change beneficiaries of life insurance policy through a will does not fall within "substantial compliance" rule because no endeavor was made to communicate the change to the insurer).

■ In the present case, decedent's attempts to change the beneficiary of his life insurance policy fall short of the substantial compliance required under California law. His action in 1989—filling out but not submitting a change of beneficiary form—cannot be viewed as an attempt to change the beneficiary, because it is clear he intended to maintain defendant as the beneficiary unless and until she sold the house, as required under the stipulated judgment of dissolution. His later attempts to change beneficiaries by executing a will and making statements that he intended plaintiffs to receive the insurance proceeds are insufficient under *Moss* and *Cook* to effect a change of beneficiary.

Under Oregon law, by comparison, the rule is more lenient. Factually, the present case is similar to *Edwards v. Wolf*, 278 Or 255, 563 P2d 717 (1977). In *Wolf*, the decedent originally took out a life insurance policy and named his father as beneficiary but later filed an amendment to the policy substituting his wife as beneficiary. The copy of the policy that the decedent retained, however, continued to show his father as beneficiary. On the decedent's divorce, it was agreed that he was the sole owner of the policy and was able to change the beneficiary. *Id.* at 257. The decedent later remarried, reexamined his copy of the policy, and asked his new wife if it was agreeable to her that his father remain the beneficiary. *Id.* at 258. Following the decedent's death, his father and wife sued the decedent's former wife to recover the proceeds of the policy. The parties stipulated that the decedent intended that his father be the beneficiary. *Id.* at 259. The court followed the rule announced in an earlier case that "maximum effect should be given to the insured's intention to change the beneficiary of his insurance policy." *Id.* at 260-61, *quoting Northern Life Ins. Co. v. Burkholder*, 131 Or 537, 283 P2d 739, *reh'g den* 134 Or 401 (1930). In both *Edwards* and *Burkholder*, "neither of the decedents made any effort to comply with the terms of the insurance policies in changing beneficiaries before their deaths." *Wolf*, 278 Or at 262. Nonetheless, although recognizing that generally "there must be at least some attempt made on the part of the insured to change a beneficiary," the court concluded that, because the parties stipulated that the decedent intended his father to be the beneficiary, the father was entitled to the proceeds. *Id.*

The "every reasonable effort" rule announced in the California cases is considerably different from the "at least some attempt" and "[no] effort to comply" standards enunciated in *Wolf*. If the rule in *Wolf* is to be followed in the present case, defendant was not entitled to summary judgment because genuine issues of material fact exist as to decedent's intent to change beneficiaries.[4] Under California law, the steps taken by decedent, viewed in the light most favorable to plaintiffs, fall short of the substantial compliance standard

---

[4] Unlike in *Wolf*, defendant in the present case maintains that decedent intended her to receive the insurance proceeds and submitted an affidavit to that effect.

enunciated in *Pimentel, Moss*, and other California cases. California and Oregon law are clearly in conflict on this question.

■■ The next question to be addressed in a choice of law problem is whether either or both jurisdictions have a substantial interest in the dispute. *Lilienthal*, 239 Or at 16. Under *Lilienthal*, we must consider "which state had the most significant relationship to the parties and the transaction, and [determine] whether the interests of Oregon are so important that we should not apply California law, despite its significant connection with the transaction." *Stricklin v. Soued*, 147 Or App 399, 404, 936 P2d 398, *rev den* 326 Or 58 (1997) (interpreting *Lilienthal*).

When decedent first named defendant as the beneficiary on the policy, both lived in Oregon. However, all the significant events concerning decedent's efforts to *change* the beneficiary occurred in California. Decedent and plaintiff Lorene Webber were California residents. Decedent filled out the change of beneficiary form in Yreka, California, and kept it in his office there. Decedent wrote a will with the assistance of a California paralegal, attempting to bequeath his life insurance proceeds to plaintiffs. Finally, decedent was in California when he told plaintiff Lorene Webber that she would receive the life insurance proceeds after his death. Decedent's only connection to Oregon was his attempt to determine, several years before his death, whether defendant had sold the Oregon home. Although defendant and plaintiffs Kenneth, Stevan, and Michael Webber are all Oregon residents, none of them had any direct connection with decedent's efforts to change his life insurance beneficiary designation. Given that most of the key events occurred in California, we conclude that California has the most significant relationship to this dispute.

■■ The next question is whether Oregon's interests are so important that we should not apply California law, despite the significant connection with California. *Stricklin*, 147 Or App at 404. Plaintiffs make no argument that Oregon's interests are such that California law should not be applied, and we are unable to conclude that Oregon's interests override the significant connection of this dispute to California. No

public policy of Oregon is undermined if California law is applied to determine whether a California resident, while in California, successfully changed the beneficiaries of his life insurance policy. We conclude that the trial court correctly applied California law to this dispute and held that defendant was entitled to summary judgment under California law.

Plaintiff Lorene Webber, in her capacity as representative of decedent's estate, also challenges the trial court's summary judgment in favor of defendant on her breach of contract claim.[5] Defendant responds that the trial court correctly granted summary judgment on this claim because plaintiffs cannot maintain a breach of contract action for an alleged failure of a party to abide by the terms of a dissolution judgment. *See, e.g., Henningsen v. Crandall*, 112 Or App 466, 469, 828 P2d 1055 (1992) (general rule is that if a claim arising from a contractual obligation is reduced to judgment, a party cannot thereafter maintain an action on the contract, but can only seek to enforce the judgment). Defendant asserts that plaintiff's only recourse would have been a contempt proceeding and that such an action would be barred by ORS 33.135, which provides that actions to impose remedial sanctions for contempt must be brought within two years of the act or omission constituting the contempt.

We do not agree with defendant's analysis. An exception exists to the general rule stated above when the agreement in question concerns obligations regarding future acts. Numerous cases establish that a party may maintain an action for breach of contract based on a property settlement agreement that calls for future acts, rather than the future payment of determinable amounts of money. Where "a divorce decree approves provisions of a property settlement agreement under which the husband is required to maintain a stated amount of life insurance for the benefit of his former wife or children, such a decree is not considered as one for the payment of money, but as one requiring the performance of a future act[.]" *Carothers v. Carothers*, 260 Or 99, 488 P2d 1185 (1971). In *Carothers*, the plaintiff—the former spouse of the decedent—had a cause of action against the decedent's estate

---

[5] The parties do not dispute that Oregon law applies to this claim.

when she discovered after his death that he had failed to maintain a life insurance policy in her favor as required by the settlement agreement entered into at their divorce. *Id.* at 101-02. In that case, the court rejected the argument that because the judgment of dissolution had not been renewed pursuant to ORS 18.360, the plaintiff could not maintain a cause of action against the decedent's estate. *See also Finlay-Wheeler v. Rofinot,* 276 Or 865, 868, 556 P2d 952 (1976) (under circumstances similar to those in *Carothers,* "the obligation to carry life insurance did not become part of the decree"). Similarly, in *Waterman v. Armstrong,* 291 Or 551, 553, 633 P2d 774 (1981), the question was whether a provision of a property settlement agreement pertaining to the future payment of medical expenses was enforceable only as part of the dissolution judgment, or whether a separate action for specific performance of the agreement could be maintained. The court followed the rule announced in the *Restatement of Judgments* § 46, comment a (1942):

> "Where a plaintiff obtains an equitable decree against the defendant by which the defendant is directed to do an act other than to pay money, the plaintiff's claim is not merged in the decree."

*Id.* at 558. Although we have questioned the continuing viability of the rule of law announced in *Waterman, Finlay-Wheeler,* and *Carothers* in light of the different rule announced in the *Restatement (Second) of Judgments* §§ 17-18 (1982), "we are not at liberty to overrule them." *Barrett and Barrett,* 126 Or App 62, 65, 867 P2d 540, *aff'd* 320 Or 372 (1996).

We have no difficulty in concluding that the alleged obligation in question here is one involving a future act other than the payment of money. Defendant's alleged obligation to inform decedent of the sale of the home, thus relieving decedent's obligation to maintain life insurance in defendant's name, was an obligation that would only arise on the occurrence of a future act—the sale of the home. That future act was not required by the stipulated decree of dissolution. *Compare Brown v. Benston,* 149 Or App 675, 680, 945 P2d 563 (1997) (where property settlement *requires* sale of real property and payment of proceeds to party, it is a present obligation for payment of money, and not an obligation that

only arises on the contingent occurrence of a future act); *Shiel v. Breuer*, 130 Or App 87, 91, 880 P2d 500 (1994), *rev den* 320 Or 508 (1995) (where property settlement agreement involved absolute and unconditional obligation for payment of specific sum on the occurrence of specific events that were certain to occur, it embodied a present obligation for the payment of money at a future time).

■ Defendant further contends, however, that even if her alleged obligation to inform decedent of the sale of the home falls within the "future act" exception described in *Waterman, Finlay-Wheeler*, and *Carothers*, those cases are nonetheless inapplicable to the present situation. In those cases, defendant argues that the property settlement agreements existed as separate documents from the dissolution decrees, and the issue was whether the separate property settlement agreements "merged" into the dissolution decrees. Defendant notes that, in this case, it is undisputed that the stipulation regarding property division, signed by defendant and decedent, was not incorporated by reference into the dissolution judgment as in *Waterman, Finlay-Wheeler,* and *Carothers*, but was actually contained within the stipulated decree of dissolution itself. To follow defendant's reasoning would be to glorify form over substance. Nothing about the property settlement agreement in the present case is substantively different from the settlement agreements at issue in the cases discussed above. Whether or not a separate document exists that embodies a contractual agreement between the parties does not determine whether the parties entered into a stipulated property settlement agreement. *See, e.g., Waterman*, 291 Or at 560 (citing with approval persuasive authority applying future acts exception to property settlement agreement that was not reduced to writing); *cf. Brown*, 149 Or App at 679 (considering effect of oral property settlement agreement, although ultimately concluding that it merged with dissolution decree because it did not fall within the "future act" exception); *Shiel*, 130 Or App at 90 (same).

■ Whether the property settlement agreement between defendant and decedent did, in fact, embody a good faith obligation on the part of defendant to notify decedent of the sale of the house is not clear. "Ordinarily, when a contract

is ambiguous, it is for the trier of fact to examine other evidence of the parties' intentions and to construe the language [of the agreement] accordingly." *Brown*, 149 Or App at 679. A genuine issue of material fact exists as to whether defendant had a contractual good faith obligation to inform decedent of the sale of the property. We therefore conclude that the trial court erred in granting summary judgment for defendant in plaintiff Lorene Webber's action, as representative of decedent's estate, against defendant for breach of contract.

In CA A98055, summary judgment in favor of defendant and against Lorene Webber as personal representative of the estate of Belden R. Webber is reversed and remanded; CA A98078 affirmed.