Argued and submitted August 22, 2005, affirmed May 3, 2006

Dennis W. ANDRES, Jr.,
*Appellant,*

*v.*

AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN,
a Wisconsin corporation,
*Respondent.*

0305-05549; A124144

134 P3d 1061

Charles Robinowitz argued the cause and filed the briefs for appellant.

Lisa E. Lear argued the cause for respondent. With her on the brief were Ronald J. Clark and Bullivant Houser Bailey PC.

Before Landau, Presiding Judge, and Ortega, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff purchased an automobile insurance policy from defendant that provided coverage for injury and damage "due to the use of a car or utility trailer." The policy definition of "car" includes pickup trucks that are "not used in any business or occupation." Plaintiff later was involved in an accident while driving a pickup truck that his employer had rented for use at work. He claimed insurance coverage, which defendant denied on the ground that plaintiff's damages were not due to his use of a "car or utility trailer" within the meaning of the policy. Plaintiff then initiated this action for breach of contract, arguing that the truck that he drove was covered under the policy. The trial court entered summary judgment for defendant. Plaintiff appeals, arguing that the trial court erred in concluding that the policy does not cover accidents involving pickup trucks used at work. We affirm.

The relevant facts are not in dispute. Plaintiff worked for an electrical contractor, which had rented a Ford F250 pickup truck for plaintiff's use at work. Plaintiff was involved in a vehicle collision involving the truck, which plaintiff had been driving in the course of his employment. The other driver involved in the accident sued plaintiff, seeking damages for personal injuries.

At the time of the accident, plaintiff was the holder of a "Family Car Policy" issued by defendant. The policy provided that defendant would pay "compensatory damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer." The policy defines "a car" as one of three things, "a private passenger car," "a utility car," or "your insured car." Those three terms, in turn, are defined as follows:

"5.   **Private passenger car** means a four-wheel **car** of the private passenger type.

"* * * * *

"10.   **Utility car** means:

"a.   A **car** with a rated load capacity of 2,000 pounds or less, of the pickup, van, sedan delivery or panel truck type *if not used in any business or occupation.*

"b.   A truck used for farming purposes.

"c.   A motor home not used for business purposes.

"\* \* \* \* \*

"14.   **Your insured car** means:

"a.   Any **car** described in the declarations and any **private passenger car** or **utility car** you replace it with. \* \* \*

"b.   Any additional **private passenger car** or **utility car** of which **you** acquire ownership during the period, provided:

"1)   If it is a **private passenger car**, **we** insure all of **your** other **private passenger cars**; or

"2)   If it is a **utility car**, we insure all of your other **private passenger cars** and **utility cars**. \* \* \*"

(Boldface in original; italics added.)

Plaintiff tendered to defendant, but defendant refused to indemnify or defend. Defendant claimed that plaintiff's policy did not apply because the pickup that he drove at the time of the accident was not a "car" within the meaning of the policy. Plaintiff defended the action against him and then initiated this action for breach of contract and damages for, among other things, the costs of the defense. As we have noted, the trial court entered summary judgment for defendant, and plaintiff appeals.

■   On appeal, plaintiff argues that the trial court erred in concluding that the truck that he was driving at the time of the accident was not a "car" within the meaning of the policy. According to plaintiff, the pickup truck had four wheels and was designed to carry passengers. Thus, argues plaintiff, it falls precisely within the definition of "private passenger car," which the policy expressly includes within the meaning of "car." At the very least, plaintiff argues, the insurance policy is ambiguous, so we should either construe it against

defendant or remand the case to the trial court so that a jury can determine what the parties intended.

Defendant responds that the policy unambiguously addresses whether pickup trucks are included within the definition of cars by specifying that pickups of 2,000 pounds or less that are "not used in any business or occupation" are cars. By necessary implication, defendant argues, pickups that do not meet all of those conditions are not "cars" within the meaning of the policy.

We review a trial court's ruling granting summary judgment for errors of law. We consider the evidence in the light most favorable to the nonmoving party—in this case, plaintiff—and ask whether the trial court was correct in finding that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. ORCP 47 C; *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993). In this particular case, the facts are undisputed; the sole issue is whether the insurance policy provides coverage.

In addressing that issue, we emphasize that we do not confront the broader ontological issue of whether a "truck" is a "car." Instead, we confront a much narrower issue of whether this particular insurance policy defines the sort of truck that plaintiff drove while at work as a "car." In addressing that narrow issue, we are guided by the interpretive principles set out in *Hoffman Construction Co. v. Fred S. James Co.*, 313 Or 464, 469-71, 836 P2d 703 (1992).

As the Supreme Court explained in *Hoffman Construction Co.*, our objective in construing a contract of insurance is to determine the intent of the parties. *Id.* at 469. The intent of the parties, in turn, is determined by a three-step process. The first step is to examine the text of the policy to determine whether it is ambiguous, that is, whether it is susceptible to more than one plausible interpretation. If it is not, the policy is interpreted in accordance with that unambiguous meaning. *Id.* at 469-70. The text of the policy includes any definitions of disputed terms included in the policy; we must, in fact, construe the policy in accordance with any such definitions. *See, e.g., Botts v. Hartford Acc. &*

*Indem. Co.*, 284 Or 95, 101, 585 P2d 657 (1978) ("The insurance company may, of course, insert in its policy any definition of [policy terms] it chooses[.]"). Only if the policy does not define the terms in dispute do we invoke assumptions about "ordinary meaning" and other aids to construction. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307-08, 985 P2d 1284 (1999) (court turns to aids to construction only if the policy does not define critical terms). If the text of the policy is ambiguous, we proceed to a second step, that is, to examine the disputed terms in the broader context of the policy as a whole. *Hoffman Construction Co.*, 313 Or at 470. If—and only if—the ambiguity persists, we construe the policy against the drafter, in this case, defendant. *Id.* at 470-71.

The Supreme Court has not explained precisely why, if such ambiguity persists, we are required to resort to a maxim of construction and are not instead directed to extrinsic evidence to determine what the parties intended. That, after all, is the usual analytic sequence in contract interpretation cases. *See, e.g., Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997) (if text of a contract is ambiguous, courts must resort to extrinsic evidence of parties' intentions). Perhaps it is because contracts of insurance ordinarily consist either of provisions required by statute or of preprinted, industry-drafted forms that are rarely subject to the sort of negotiation that would produce useful extrinsic evidence. Whatever the reason, the court has been clear since *Hoffman Construction Co.* that the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself. *See St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 192, 923 P2d 1200 (1996) ("The interpretation of the terms of an insurance policy is a question of law.").

With the foregoing principles in mind, we turn to the terms of the policy at issue in this case and the question whether that policy covers the sort of truck that plaintiff drove while at work. As we have noted, the policy limits coverage to injury and damage "due to the use of a car." The policy defines car as one of three things—"your insured car," a "utility car," or a "private passenger car." It is apparently undisputed that the pickup truck at issue in this case does not meet the definition of "your insured car" under the terms

of the policy. The question is whether it is a "utility car" or a "private passenger car."

As we have noted, the policy expressly defines "utility car" to include a pickup truck with a rated load capacity of 2,000 pounds or less only "if not used in any business or occupation." In this case, it is undisputed that the pickup truck that plaintiff was driving at the time of the accident was rented by his employer for use in his employment. Thus, the pickup truck that plaintiff drove was not a "utility car" within the meaning of the policy.

That leaves whether the pickup truck was a "private passenger car" within the meaning of the policy. The phrase is defined by the policy itself, albeit in somewhat circular fashion, as "a four-wheel car of the private passenger type." Plaintiff argues that, because the truck that he drove at the time of the accident had four wheels and a passenger seat, it meets the definition of "private passenger car." Considered in isolation, plaintiff's argument is not implausible. It is apparently undisputed that the truck that he was driving had four wheels and a passenger seat. But we are not to construe the terms of a contract of insurance in such isolation. As *Hoffman Construction Co.* makes clear, we must view the terms in the broader context of the policy as a whole. Viewing plaintiff's proposed interpretation in that broader context, it becomes apparent that the interpretation is untenable.

If the pickup truck that plaintiff was driving were a "private passenger car" because it had four wheels and a passenger seat, then so also would be practically every other four-wheeled vehicle on the road. A four-wheeled truck with 4,000 pounds of hauling capacity used exclusively at work, for example, would be a "private passenger car" under plaintiff's reading of the policy, as long as the cab contained a passenger seat. Such an interpretation is not likely the one the parties intended. If it were, then the other categories of "car" that the policy also mentions become superfluous. In particular, the reference to the term "utility car" and the exclusion of small pickup trucks that are used in business would make no sense; even if such pickups were excluded from the definition of "utility car," they would remain covered as "private passenger cars," so the exclusion could not be given effect. We

are constrained not to interpret the terms of insurance policies so that provisions become meaningless. *See, e.g., Hoffman*, 313 Or at 472 ("We assume that parties to an insurance contract do not create meaningless provisions.").

Plaintiff insists that his interpretation of the policy would lead to no such superfluity. According to plaintiff, all provisions of the policy could be given meaning if we were to conclude that the exclusion for small pickup trucks used in business applied only to such trucks that are modified so that their passenger seats are removed. The phrasing of the policy, however, simply does not say that. Moreover, plaintiff does not explain—and we do not understand—why an insurer would single out small pickups used in business with their passenger seats removed for special treatment in an insurance policy.

Plaintiff also argues that construing the term "private passenger car" to include small pickup trucks would comport with decisions of other jurisdictions that have addressed the issue. There are, indeed, a number of decisions from other jurisdictions in which courts have addressed whether a pickup truck is a "car" within the meaning of an automobile liability insurance policy. Some conclude that a small pickup truck is a "private passenger vehicle" as that phrase is defined in particular insurance policies. *See, e.g., Employers Mut. Liability Ins. Co. v. Richards*, 332 So2d 588, 589 (La App 1976). Some conclude that a small pickup truck is not a "private passenger vehicle" because of the way the phrase is defined in the particular policy at issue or because such vehicles are excluded elsewhere in the policies. *See, e.g., National Automobile and Casualty Ins. Co. v. Contreras*, 193 Cal App 3d 831, 836-37, 238 Cal Rptr 627 (1987); *Ohio Casualty Ins. Co. v. Tyler*, 85 Ill App 3d 410, 414, 407 NE2d 77 (1980); *Laraway v. Heart of America Life Ins. Co.*, 153 W Va 70, 74, 167 SE2d 749 (1969). Still others conclude that the question is one for the jury. *See, e.g., Sanders v. Georgia Farm Bureau Mut. Ins. Co.*, 182 Ga App 279, 283-84, 355 SE2d 705 (1987); *Schilling v. Stockel*, 26 Wis 2d 525, 536-37, 133 NW2d 335 (1965). None, however, is based on the precise language at issue in this case. And none applies the interpretive principles that we are required to apply under *Hoffman*.

We conclude that the provisions of the policy at issue in this case, when viewed in context, are unambiguous. They permit only one reasonable construction, and that is—as the trial court correctly concluded—that the pickup truck that plaintiff drove at the time of the accident was not a "car" within the meaning of the policy. The trial court therefore did not err in granting defendant's motion for summary judgment.

Affirmed.