Argued and submitted December 15, 2006, reversed and remanded June 13, 2007

Margaret SACKOS,
*Plaintiff-Appellant,*

*v.*

THE GREAT-WEST LIFE
ASSURANCE COMPANY,
*Defendant-Respondent.*

THE GREAT-WEST LIFE
ASSURANCE COMPANY,
*Third-Party-Plaintiff,*

*v.*

Sharon Rose GRAHAM,
*Third-Party-Defendant.*

Sharon Rose GRAHAM,
*Plaintiff,*

*v.*

THE GREAT-WEST LIFE
ASSURANCE COMPANY,
*Defendant.*

Baker County Circuit Court
02710; A129848

160 P3d 1026

W. Eugene Hallman argued the cause for appellant. With him on the briefs were Mautz Baum & O'Hanlon, LLP, and Hallman & Dretke.

John A. Berge argued the cause for respondent. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before Landau, Presiding Judge, and Wollheim, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

At issue in this case is who is the beneficiary of a life insurance policy. The decedent purchased a life insurance policy and named his wife as beneficiary. He and his wife later divorced, however, and sometime after that he submitted forms to the insurance company indicating that he wanted to change the beneficiary to a friend. The insurance company took no action. When the decedent died, his former wife claimed the life insurance benefits. When the insurance company did not pay her the benefits, she sued the company for breach of contract. Meanwhile, the insurance company, upon discovering the change of beneficiary forms in its files, initiated an action for declaratory judgment as to the identity of the rightful beneficiary under the policy. The former wife filed a motion for summary judgment, arguing that she is the rightful beneficiary. The insurance company filed a cross-motion for summary judgment, arguing that the decedent's friend named in the change of beneficiary form is the proper beneficiary. The trial court denied the motion for summary judgment, granted the insurance company's cross-motion, and entered a limited judgment accordingly. The former wife appeals, arguing that she is entitled to judgment as a matter of law or, in the alternative, that there is at least a genuine issue of material fact as to who the decedent intended to name as his beneficiary. We agree with the latter proposition and therefore reverse and remand.

On review of a summary judgment ruling, we review the facts in the light most favorable to the nonmoving party to determine if the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

The following facts are not in dispute. Plaintiff Margaret Sackos married Brian Fraser in 1975. Two years later, Fraser purchased a life insurance policy with defendant Great-West Life Assurance Company (Great-West), with a face value of $50,000. He designated Sackos as beneficiary. In 1987, Fraser took out a successor policy with Great-West with a face value of $68,000. He again named Sackos as beneficiary. The policy provided that "[t]he Owner and the beneficiary are as shown in the application unless

changed as provided for in this policy." The provision for changing beneficiaries stated:

"While the insured is living, the owner may change the beneficiary by giving written notice. A recorded change of beneficiary will take effect as of the date the notice was signed. A change of beneficiary is subject to any payment made or other act of the company before recording."

In 1993, Fraser and Sackos divorced. Fraser began an on-again-off-again relationship with Sharon Graham. In December 1997, Fraser contacted Great-West and asked to change the beneficiary of his life insurance policy from Sackos to Graham. Great-West sent Fraser its standard form for changing beneficiaries. Fraser completed the form, naming Graham as the new beneficiary and his four sons as contingent beneficiaries, and returned the form to Great-West. Great-West received the form and placed it in its file, but did not change its computer account records to show the change in beneficiary.

Some uncertainty emerged concerning the amounts that the contingent beneficiaries were entitled to under the policy. To avoid the uncertainty, Great-West sent Fraser a Direction of Settlement form that specified the amounts that each of the sons would receive under the policy in the event of Fraser's death. The Direction of Settlement form also specified that Graham was the primary beneficiary. Fraser signed the form and returned it to Great-West in January 1998. That form, too, was placed in Fraser's file but not otherwise registered in the company's computer account records.

In 2000, Fraser's policy lapsed because of nonpayment of premiums. He applied for reinstatement. The reinstatement application included questions about his health. Fraser disclosed some knee surgery, but mentioned no other health conditions. Great-West reinstated the policy.

Fraser died on May 26, 2001. Sackos submitted a claim (using her married name on the form and describing herself as Fraser's "spouse") on the Great-West life insurance policy. Great-West investigated the claim and discovered that, among other things, Fraser had not disclosed in his reinstatement application certain information about his

health that affected his life expectancy in his reinstatement application—specifically, that he was addicted to heroin and suffered from Hepatitis B and C at the time. Great-West rescinded the policy.

Sackos then initiated this action for breach of contract. In the course of discovery on the breach of contract claim, Great-West discovered the change of beneficiary and Direction of Settlement forms in its files. It then filed a third-party claim against Graham seeking a declaration as to who is the rightful beneficiary under its policy.

Sackos moved for summary judgment on the identity of the beneficiary under the Great-West policy, arguing that she is the only properly named beneficiary. According to Sackos, the policy plainly requires any changes in the designation of a beneficiary to be "recorded" in order to take effect. In this case, she argued, it is undisputed that Great-West neglected to record Fraser's change of beneficiary and Direction of Settlement forms; they were merely placed in a file and ignored for three years.

Great-West filed a cross-motion for summary judgment, arguing that Graham is the only properly named beneficiary. According to Great-West, Fraser plainly indicated his intention to change beneficiaries when he signed and returned the change of beneficiary and Direction of Settlement forms. The failure to record those forms, Great-West argued, should not affect the validity of the change in beneficiaries.

In opposition to Great-West's cross-motion, Sackos argued that the lack of recording is fatal to the change in beneficiaries. In any event, she argued, the facts show that Fraser was extremely confused at the time and that he had told his sister, one of his sons, and Sackos that he understood that Sackos remained the beneficiary under the policy.

The trial court denied Sackos's motion and granted Great-West's cross-motion. The court concluded that Fraser clearly expressed his intention to change beneficiaries. The court entered a limited judgment in favor of Great-West under ORCP 67 B.[1]

---

[1] The breach of contract claim is still pending.

On appeal, Sackos argues that the trial court erred in denying her motion for summary judgment because the policy unambiguously provides that Fraser's attempted change in beneficiaries was ineffective. She also argues that the court erred in granting Great-West's motion because there was at least a genuine issue of material fact about whether Fraser actually intended to change beneficiaries. In response, Great-West argues that the trial court correctly concluded that Fraser intended to change beneficiaries and that the insurance company's failure to record the change does not affect its validity.

■ The parties agree that the issues on appeal require an interpretation of the insurance policy, which is a question of law. *Holloway v. Republic Indemnity Co. of America,* 341 Or 642, 649, 147 P2d 329 (2006). Our task is to ascertain the intention of the parties as reflected by the policy's terms and conditions. *Id.; Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or 464, 469, 836 P2d 703 (1992).

■ We begin with the wording of the policy, applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings. *Id.* at 470. If, based on that analysis, we find only one plausible interpretation of the disputed terms, our analysis goes no further. *Id.*

■ ■ If, however, the disputed terms are susceptible to more than one plausible interpretation, we examine those terms in the broader context of the policy as a whole. *Id.* The Supreme Court has said that "a term is ambiguous * * * only if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continue[ ] to be reasonable," despite our resort to the interpretive aids outlined above. *Id.* "If the ambiguity remains after the court has engaged in those analytical exercises, then 'any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company * * *.' " *North Pacific Ins. Co. v. Hamilton,* 332 Or 20, 25, 22 P3d 739 (2001) (quoting, among other cases, *Hoffman,* 313 Or at 470 (altered text in original)).

■ In all events, interpretation of an insurance policy is a question of law that is confined to the four corners of the

policy without regard to extrinsic evidence. *Tualatin Valley Housing v. Truck Ins. Exchange,* 208 Or App 155, 160, 144 P3d 991 (2006), *rev den,* 342 Or 344 (2007); *Andres v. American Standard Ins. Co.,* 205 Or App 419, 424, 134 P3d 1061 (2006).

■ The portion of the policy at issue in this case states that,

> "[w]hile the insured is living, the owner may change the beneficiary by giving written notice. A recorded change of beneficiary will take effect as of the date the notice was signed. A change of beneficiary is subject to any payment made or other act of the company before recording."

By the plain terms of the second sentence of that provision, a "recorded" change of beneficiary takes effect on the date it was signed. Strictly speaking, that sentence does not address the effect of an unrecorded change of beneficiary. But we do not read such provisions in a vacuum. In the context of the policy as a whole, it becomes clear that recording is intended to be a condition of enforceability.

First, there is the fact that the policy takes the trouble to mention the effect of recording at all. If recording did not matter, there would be no point to mentioning the effect of recording on the change of beneficiary designation. *See, e.g., Hoffman,* 313 Or at 472 ("We assume that parties to an insurance contract do not create meaningless provisions."). The fact that the policy mentions recording strongly suggests that its intended effect is that a change in beneficiary form takes effect as of the date that it was signed *if it was recorded.* Conversely, if a change in beneficiary is not recorded, it does not become effective.

Second, the significance of recording is confirmed by the reference to it in the succeeding sentence, referring to the effect of payment before that event. Under the terms of the policy, if Great-West pays out any benefits before it records a change of beneficiary, then the change of beneficiary is subject to any such payments. In other words, if the company received notice of the death of an insured and paid out benefits to the original beneficiary before it recorded a change of

beneficiary, then the unrecorded change of beneficiary does not have any effect.

■ Great-West insists that, even if "recording" is required by the policy, the company did "record" the change in beneficaries merely by receiving the documents. We are not persuaded.

The terms "recorded" and "recording" are not defined in the policy itself. Accordingly, we are to give them their common and ordinary meanings. *Hoffman*, 313 Or at 469. Pertinent definitions of the term "record" in *Webster's Third New Int'l Dictionary* 1930 (unabridged ed 2002), include

> "**2 a** (1) : to set down in writing : make a written account or note of : furnish written evidence of : put into written form ‹a people that carefully ~ed their history› ‹ ~ed her impressions in a series of books› ‹ ~ed the sounds heard in phonetic symbols› (2) : to make or have made an authentic official copy of (as a deed, mortgage, lease) and deposit or have deposited esp. as in an office designated by law (3) : to cause to be noted officially in or as if in writing ‹ ~ing and tallying the votes› ‹ ~ed the proceedings of the court›."

Great-West does not explain, and we do not understand, how its reading of the terms "recorded" and "recording" to refer to mere "receipt" can be reconciled with any reasonable construction of the term. Aside from that, the policy employs the term "receipt" in a number of different instances, suggesting that, when it is intended to refer to the act of "receiving," the policy employs precisely that term.

■ Consequently, we conclude that the policy unambiguously requires a change of beneficiary to be recorded to be effective and that, in this case, the undisputed evidence shows that Great-West did not record Fraser's change of beneficiary forms. That does not mean, as Sackos suggests, that she is entitled to relief as a matter of law, however. In Oregon, it has long been the law that a change of beneficiaries of a life insurance policy is not necessarily defeated by a failure to conform to the requirements of the policy. The overriding question is whether the decedent intended to accomplish such a change.

In *Northern Life Ins. Co. v. Burkholder*, 131 Or 537, 283 P2d 739, *reh'g den*, 134 Or 401 (1930), a life insurance policy provided that a change of beneficiaries did not take effect until endorsed by the company at its home office. The decedent attempted to effect a change of beneficiaries by means of writing the name of his fiancée in a blank space on a copy of the policy provision pertaining to beneficiaries. When the decedent died, his estate contested the addition of the fiancée's name as a beneficiary on the ground that the addition had never been endorsed by the insurer at its home office. The court held that, notwithstanding the failure to obtain the endorsement, the change in designation of the beneficiary was effective. The decedent's intentions, the court observed, were not in dispute. "It is true that [the decedent] did not follow the technical method prescribed by the policy," the court acknowledged. *Id.* at 552. "[B]ut this method was for the benefit or convenience of the company, and so far as this old line insurance company was concerned, the indorsement upon the policy by the president or secretary would have been a purely ministerial act which they could not legally have refused." *Id.*

The rule was reaffirmed in *Edwards v. Wolf*, 278 Or 255, 563 P2d 717 (1977). In that case, the decedent took out a life insurance policy and named his father as beneficiary. Later, he filed an amendment to the policy, substituting his wife as beneficiary. He sent the amendment to the insurer, but retained a copy of the unamended policy in his possession. The decedent and his wife ultimately divorced, and the decedent remarried. The decedent showed his second wife his copy of the unamended life insurance policy, which named his father as beneficiary, and asked whether that designation met with her approval. She agreed. When the decedent died, the first wife asserted that she was the only properly named beneficiary. *Id.* at 258. Citing *Northern Life Ins. Co.*, the court concluded that the defects in the process for changing the designation of beneficiary back to the decedent's father were not controlling; the overriding concern, the court said is "the insured's intention to change the beneficiary of his insurance policy." *Edwards*, 278 Or at 261. The court acknowledged that the decedent had not fully complied with the process for changing beneficiaries. *Id.* at 262. As long as there is "at least

some attempt made on the part of the insured to change a beneficiary," the court held, equity would give effect to the insured's intentions. *Id.* "How much or how little depends, apparently, on the facts of each case." *Id.* In that particular case, the court concluded that, in light of the fact that it was undisputed that the decedent wanted his father to receive the proceeds of the policy, that was sufficient. *Id. See also Webber v. Olsen*, 157 Or App 585, 592, 971 P2d 448 (1999), *rev'd on other grounds*, 330 Or 189, 998 P2d 666 (2000) (discussing Oregon's "lenient" view concerning the failure to comply with requirements to change beneficiaries).

■    In both *Northern Life Ins. Co.* and *Edwards*, however, the intentions of the decedent were not in dispute. In this case, the matter is very much in contention. Great-West relies on the fact that Fraser filed two different forms indicating that he intended to change the beneficiary from Sackos to Graham. Sackos, on the other hand, relies on the fact that Fraser told his sister, one of his sons, and Sackos herself that he intended Sackos to remain his beneficiary. The conflict in that evidence thus creates a genuine issue of material fact as to Fraser's intentions, which cannot be resolved on summary judgment. It necessarily follows that the trial court did not err in denying Sackos's motion for summary judgment. By the same token, it also necessarily follows that the court erred in granting Great-West's summary judgment motion.

Reversed and remanded.