# AMERICAN STATES INSURANCE COMPANY
*Appellant,*

*v.*

# SUPER SPRAY SERVICE, INC. et al,
*Respondents.*

(82-1512-1; CA A33799)

713 P2d 682

Lloyd B. Ericsson, Portland, argued the cause for appellant. With him on the briefs were Barbara J. Gazeley and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Timothy N. Brittle, Portland, argued the cause for respondents Super Spray Service, Inc., and Robert Yancey. With him on the brief was Acker, Underwood & Smith, Portland.

No appearance for respondent Carleton.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals an adverse judgment in its action for a declaration that its policy did not provide liability coverage to defendants for damage to Carleton's crops from aerial spraying.[1] Defendants counterclaimed, alleging that plaintiff must indemnify defendants for any legal liability to Carleton. Plaintiff and defendants filed cross motions for summary judgment. The court denied plaintiff's motion and granted defendants' on the issue of liability. Plaintiff assigns those rulings as errors. The parties stipulated to damages of $88,432.12, plaintiff reserving rights of appeal on the issue of coverage, and the court entered judgment for defendants on plaintiff's complaint and on their counterclaim. We affirm.

The parties do not dispute that in February, 1982, defendants contracted with Carleton to spray herbicide by airplane on his 50-acre alfalfa field. By mistake, they sprayed another of Carleton's fields, 65-acres, on which, without knowing of the mistake, he later planted potatoes. The herbicide destroyed the potato crop.

Plaintiff insured defendants under a policy that contained an endorsement which stated that it did not cover "property damage arising out of the direct application of chemicals, whether intentional or in error."[2] Plaintiff argues

---

[1] By "defendants" we refer only to defendants Super Spray Services, Inc., and Yancey. We will refer by name to defendant Carleton, who did not appear here.

[2] The full text of the chemical coverage endorsement provides:

"[Plaintiff] will pay damages [defendants] are legally required to pay for bodily injury or property damage caused by an occurrence during the policy period arising out of the aerial application of chemicals.

"[Plaintiff does] not cover any:

"a. Bodily injury or property damage arising out of aerial application of chemical formulations containing Picloram or any defoliant, or desiccant applied in dust form; or

"b. Bodily injury or property damage arising out of existence or storage of chemicals or chemical containers, except as the result of an occurrence during the loading or unloading of chemicals in your aircraft;

"c. Property damage arising out of *direct application of chemicals,* whether intentional or in error; or

"d. Property damage arising out of accidental chemical drift to a field area or premises owned, occupied, rented by or in the care, custody or control of anyone for whom you were performing aerial application; or

that, although erroneous, the application of herbicide on the 65-acre field was "direct" and, accordingly, that the policy did not insure against liability for the damage. Defendants respond that the chemical coverage endorsement is ambiguous and should be construed against plaintiff.

Defendants also argue that the policy covers the loss, because it is as broad as ORS 634.116(5), which, they assert, requires coverage. They rely on the provision of the policy which states:

> "Statements in this policy conflicting with insurance statutes of [Oregon] are hereby amended by us to conform to the statutes."

The parties do not dispute that defendants procured the policy for the purpose of complying with the requirements of ORS 634.116(5), and plaintiff concedes that, under the provision just quoted, the policy provides the public liability coverage that the statute requires.[3] Plaintiff argues, however, that the statute does not require coverage. Because we agree that ORS 634.116(5) requires coverage for this loss, we do not reach the question of the policy's ambiguity.[4]

ORS 634.116(5) states:

> "The department shall not issue or renew a pesticide operator's license until the applicant or licensee has furnished evidence to the department, in the form of a public liability policy issued by an insurance company qualified to do business in Oregon, protecting the applicant or licensee against liability for injury or death to persons and loss of or damage to property resulting from the application of pesticides, or in lieu

---

"e. Bodily injury or property damage arising out of aerial application of chemicals unless all of your aircraft that you operate for the purpose of aerial application are insured by us at the time of the occurrence." (Emphasis supplied.)

[3] "In a number of circumstances the requirements of statutes and ordinances have been deemed covered by insurance policies that were procured for the purpose of complying with those requirements, adding to or displacing contrary provisions of the policy itself. * * * We need not here examine how far this rule extends, because [the insurance company] concedes * * * that it applies to its situation." *Rhone v. Louis,* 282 Or 693, 695, 580 P2d 549 (1978). (Citations omitted.)

[4] The trial court held that the chemical coverage endorsement, using the words "direct application of chemicals," was ambiguous and ruled for defendants on that basis.

of such insurance, has furnished a deposit of cash or negotiable securities acceptable to the department which may be applied by the department to the payment of damages resulting from such liability. However:

"(a) * * * The financial responsibility required by this section shall not apply to damages or injury to crops, real or personal property being worked upon by the applicant."

The statute requires that pesticide operators have insurance for damage to property from application of herbicides, except for damage to "property being worked upon" by them. Because the policy is amended to conform to ORS 634.116, it insures against Carleton's loss, unless the 65-acre parcel was "property being worked upon" by defendants. They assert it was not.

■   Plaintiff contends that the parcel was "property being worked upon," because the pilot intended to spray herbicide on it, even though it was the wrong field. Plaintiff concedes, however, that, had the field been owned by a person who was not a party to the contract, it would not have been "property being worked upon." Plaintiff supports its interpretation with affidavits of employes of the Oregon Departments of Justice and Agriculture.[5]

■   Plaintiff's interpretation, however, conflicts with the language of ORS 634.116(5). The statute does not distinguish between property on the basis of ownership, but rather on whether it is "being worked upon." We interpret that phrase to refer to property which the owner has agreed to have sprayed. ORS 634.116(5) does not require that the policy protect such property from damage from spraying. Carleton did not contract to have the 65-acre field sprayed, and it was not, therefore, "property being worked upon." The court did not err when it denied plaintiff's motion for summary judgment and granted defendants' motion for partial summary judgment.

Affirmed.

---

[5] Although we give weight to the opinions of agencies in charge of administering statutory provisions, we will not accept an agency interpretation that conflicts with the statute.