Argued and submitted March 18, affirmed on appeal and cross-appeal
November 18, 2009

Kriste LAIRD,
as personal representative of
the Estate of Ronny Lewis Laird, Jr.,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

ALLSTATE INSURANCE COMPANY,
*Defendant-Respondent*
*Cross-Appellant.*

Multnomah County Circuit Court
060606275; A137006

221 P3d 780

Michael H. Bloom argued the cause and filed the briefs for appellant - cross-respondent.

Douglas F. Foley argued the cause for respondent - cross-appellant. With him on the briefs were Katie D. Buxman, and Foley & Buxman, PLLC.

Before Landau, Presiding Judge, and Schuman, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

### ROSENBLUM, J.

Defendant issued an automobile liability insurance policy and a personal umbrella policy covering a car involved in an accident that resulted in the death of plaintiff's husband. The auto policy contains an omnibus clause that provides that the policy covers anyone using the car with the permission of the "policyholder." Plaintiff brought an action against the driver and a passenger in the car, neither of whom had permission from the named insureds to use the car when the accident occurred. Plaintiff contended that the named insureds' daughter, who was listed as a driver in the auto policy, was a policyholder and had given the driver and passenger permission to use the car. She also contended that, even if the daughter was not a policyholder, as a matter of law, her permission was sufficient to extend coverage to the driver and passenger under the "initial permission" rule. The trial court directed a verdict in defendant's favor. We affirm.

The facts material to our decision are not in dispute. The car in question was purchased by Jim and Gayle Ritz for their daughter Jillian, who was a college student at the time, to use.[1] Although the car was registered in the names of all three and Jillian was its primary driver, Jim and Gayle, who paid for the car and for its upkeep, considered the car to be theirs and maintained a certain level of control over it. Specifically, they instructed Jillian that she was not to allow anyone else to drive it.

In spite of that instruction, Jillian allowed her boyfriend, Dillon Franklin,[2] to use the car on occasion. On the night of the accident at issue in this case, Franklin used the car to take three other people, including his friend Jason Barker, from Newport to a party in Depoe Bay. At the party, Barker and Franklin became intoxicated. At some point, the two of them decided to go back to Newport. Barker believed that he was "in better shape" than Franklin, so he asked for the keys to the car, which Franklin gave him. On the way back to Newport, the car crossed the center line and collided

---

[1] To avoid confusion, we refer to the members of the Ritz family by their first names throughout this opinion.

[2] Jillian and Franklin have since married.

head-on with a pickup, which plaintiff's husband was driving. He died from his injuries. Franklin also suffered serious injuries.

Plaintiff brought a wrongful death action against Barker and Franklin, both of whom tendered their defense to defendant. Franklin also brought a personal injury action against Barker, who tendered his defense in that case to defendant as well. Defendant refused to defend either Barker or Franklin. Barker and Franklin stipulated to judgments in plaintiff's favor and assigned to her whatever indemnity rights they have against defendant. Barker also stipulated to a judgment in Franklin's favor. Franklin assigned plaintiff 50 percent of his indemnity rights for that action. Plaintiff then brought this action against defendant, claiming that it was obligated to defend both Barker and Franklin and to pay the judgments.

The trial court ruled that Jillian was not a policyholder under the terms of the auto policy and thus could not, for purposes of insurance coverage, grant permission to Barker and Franklin to use the car. It construed the term "policyholder" to mean "one who holds the policy, one who owns or purchases the policy, one who is able to exercise control over the policy." From there, it concluded that the named insureds are the persons who purchase and control the policy. Thus, it concluded that Jim and Gayle, the named insureds on the auto policy, were the only policyholders.

With respect to the personal umbrella policy, the court concluded that, other than providing a higher liability limit, its coverage was coextensive with the auto policy. In other words, it concluded that the umbrella policy also covered permissive users of vehicles owned by Jim and Gayle. In light of its determination that Barker and Franklin were not permissive users, however, it concluded that the policy did not provide coverage in this case.

Defendant moved for a directed verdict. At plaintiff's request, the court agreed to defer ruling on the motion, and a jury trial was held to determine whether Jillian had actually given either Barker or Franklin permission to use the car and whether Franklin had given Barker permission. The jury found that permission had been given in each instance. The

court then directed a verdict in defendant's favor based on its conclusion that Jillian was not a policyholder. It also granted a partial directed verdict on the question whether Jillian had actually given Barker permission to use the car, concluding that there was no evidence to support the jury's finding in that respect. The court also ruled that defendant did not have a duty to defend Barker and Franklin.

Plaintiff appeals, assigning error to the trial court's rulings on defendant's motions for directed verdict and to its ruling on the issue of defendant's duty to defend Barker and Franklin.[3] In her first assignment of error, plaintiff challenges the trial court's conclusion that, under both policies, only Jim and Gayle could grant permission to use the car. Plaintiff makes two arguments in support of that assignment. First, she contends that Jillian was a policyholder under the auto policy and, accordingly, that her permission was sufficient to extend coverage to Barker and Franklin. Plaintiff contends that the auto policy is ambiguous as to who is a "policyholder" and, therefore, that the policy must be construed against defendant. Second, she argues that, even if Jillian was not a policyholder, as a permissive user herself, she was, as a matter of law, able to give permission to Barker and Franklin.

We begin with plaintiff's argument that Jillian was a policyholder under the auto policy. To address that argument, we must construe the policy to determine the meaning of the word "policyholder." The goal in interpreting an insurance policy is to determine the intent of the parties, *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001), as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985). In determining the parties' intent, the first step is to examine the text of the policy to

___

[3] Defendant cross-appeals, challenging the trial court's ruling that the umbrella policy covered permissive users. Defendant's "cross-appeal" is actually a cross-assignment of error, because defendant does not seek reversal or modification of the judgment. *See* ORAP 5.57(2). Because we affirm on plaintiff's appeal, we need not address defendant's contention. However, we must dispose of the cross-appeal, which we do by affirming. *See Abbott v. Baldwin*, 178 Or App 289, 291 n 1, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002).

determine whether it is susceptible to more than one plausible interpretation. *Andres v. American Standard Ins. Co.*, 205 Or App 419, 423, 134 P3d 1061 (2006). The text of the policy includes any definitions given in the policy. *Id.* When a term is undefined in an insurance policy, "we identify the ordinary meaning of the term and examine both the immediate context in which it is used and the broader context of the policy as a whole to determine whether there remains any ambiguity about what the parties [to the policy] intended." *Mutual of Enumclaw Ins. Co. v. Rohde*, 170 Or App 574, 579, 13 P3d 1006 (2000). If the ambiguity persists, we construe the policy against the drafter, in this case, defendant. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470-71, 836 P2d 703 (1992). Although ordinary rules of contract interpretation generally apply to the interpretation of an insurance policy, extrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy under Oregon law. *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 502-03, 505, 156 P3d 105, *rev den*, 343 Or 363 (2007).

The policy at issue here begins with policy declarations. The first page of the policy declarations provides a summary and a statement of the total premium. The summary consists of four sections separated by horizontal lines. The first section begins with "NAMED INSURED(S)," followed by "Jimmy Roy & Gayle L Ritz" and their address. It then states, "YOUR ALLSTATE AGENT IS," and lists the name, telephone number, and address of the agent. It then states, "YOUR BILL lists your payment options." The second section states the policy number and the period of coverage. The third section states, "DRIVER(S) LISTED," followed by "Jimmy Roy," "Gayle L," and "Jillian." It also notes that no drivers are excluded from coverage.[4] The fourth section lists the three vehicles covered.

The policy declarations are followed by the policy itself, which is divided into five sections: general provisions followed by provisions governing each of four different types

---

[4] ORS 742.450(6) provides that a motor vehicle liability insurance policy "may exclude by name from coverage * * * any person other than the named insured" for specified reasons.

of coverage—liability, personal injury protection, uninsured motorist, and loss to the covered autos. The policy is followed by a "Policy Endorsement," which contains a number of amendments. Where applicable, we refer to the endorsement when describing the terms of the policy.

Among the general policy provisions is a "Duty To Report Policy Changes," which states, in part, "Your policy was issued in reliance on the information you provided concerning autos and persons insured by the policy. To properly insure your auto, you should promptly notify us when you change your address or whenever any resident operators insured by your policy are added or deleted."[5] It states further, "You must notify us within 30 days when you acquire an additional or replacement auto or if your inoperable motor vehicle not described on the Policy Declarations becomes operational."

Another provision governs cancellation of the policy. It first states, "You may cancel this policy by writing and telling us on what future date you wish to stop coverage." It then states, "Allstate may cancel part or all of this policy by mailing notice to you at your last known address." Another provision governs "[n]onrenewal": "If we don't intend to continue the policy beyond the current policy period, we will mail you notice at least 30 days before the end of the policy period."

The liability insurance section of the policy—the section specifically at issue in this case—states,

> "Allstate will pay for all damages a person insured is legally obligated to pay because of: (1) bodily injury sustained by any person, and (2) damage to or destruction of property, including loss of use.

> "Under these coverages, your policy protects a person insured from liability for damages on account of accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto.

---

[5] Throughout the policy, words that are expressly defined in the "definitions" sections of the policy, such as "you," "your," "resident," and "motor vehicle," are printed in bold. For readability purposes, we omit the boldface in quotations from the policy throughout this opinion.

"We will defend an insured person sued as the result of a covered auto accident * * *."

It goes on to provide who qualifies as an insured person:

"Persons Insured

"(1)    While using your insured auto:

"(a)    you,

"(b)    any resident, and

"(c)    any other person using it with your permission."

The policy also defines "you" and "your": " 'You' or 'Your'— means the policyholder named on the [policy declarations] and that policyholder's resident spouse."[6] The word "policy-holder" is not defined and, aside from the definition of " 'You' or 'Your,' " which appears in several places, is not used anywhere else in the policy.

As noted, plaintiff contends that Jillian was a policy-holder and, thus, under the terms of the policy, was able to give Barker and Franklin permission to use the car. Plaintiff contends that the trial court's conclusion that "policyholder" means "named insured" is at odds with the rules of contract interpretation. Specifically, she contends that different terms in a policy are presumed to have different meanings. Noting that all of the persons named in the policy declarations are identified either as named insureds or as listed drivers, she contends that, because "policyholder" cannot mean either of those things, it must be construed to mean both of them. In other words, "policyholder" must refer collectively to the named insureds and the listed drivers. In light of the presumption that different terms have different meanings, she

---

[6] The "definitions" portion of the liability insurance section of the policy actually defines that term as "the policyholder named on the declarations page and that policyholder's resident spouse." The same definition of " 'You' or 'Your' " appears in each of the three other sections governing specific types of coverage. The policy endorsement expressly amends the definition of " 'You' or 'Your' " in each of the other three sections; the amended definition is identical except that the words "policy declarations" are replaced with "declarations page." The endorsement does not provide an amended definition of " 'You' or 'Your' " for the liability insurance section. However, the first provision of the endorsement states, " 'Declarations page' is replaced by 'Policy Declarations' throughout the policy." Accordingly, in this opinion, quotations of the definition of " 'You' or 'Your' " in the liability insurance section reflect that replacement.

contends, her construction of the policy is the only plausible one. At the very least, in her view, if the trial court's construction of the policy—with which defendant agrees—is plausible, her construction is plausible as well, rendering the policy ambiguous. The resulting ambiguity, she argues, requires that the policy be construed against defendant.

■    We begin with the text of the policy—specifically, the word "policyholder." Because the word is not defined in the policy, we identify its ordinary meaning, which is "one (as a person or firm) granted an insurance policy." *Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002). "Policy," in turn, means "a certificate of insurance : a writing whereby a contract of insurance is made : the document containing the contract made by an insurance company with a person whose property or life is insured * * *." *Id.* Those definitions suggest that a policyholder is a person who enters into a contract with an insurance company, which is consistent with the trial court's conclusion that a policyholder is a person who purchases and has the right to control the policy.

The broader policy as a whole also supports that conclusion. In the provision on the duty to report policy changes, the statement that the policy was issued "in reliance on the information you provided" indicates that "you" refers to the persons who obtained the policy, not merely those who are insured under it. The next statement—that "you should promptly notify us when you change your address or whenever any resident operators insured by your policy are added or deleted"—similarly indicates that "you" refers to the persons who have control over the policy, as does the provision allowing "you" to cancel the policy. We agree with the trial court that it stands to reason that the named insureds are the persons who obtain and control an insurance policy.

The broader context also suggests that "you" and "your" refer to the named insureds. The first page of the policy declarations identifies the named insureds and immediately thereafter identifies "YOUR ALLSTATE AGENT" and explains that "YOUR BILL lists your billing options." The proximity of those statements suggests that "YOUR" refers to the named insureds. Furthermore, the provision allowing defendant to cancel the policy specifies that it may do so by

"mailing notice to you at your last known address." The only address listed in the policy is for Jim and Gayle—under the heading "NAMED INSURED(S)." If "you" and "your" were intended to include listed drivers other than the named insureds, it seems likely that the policy would note the address of any such person.

As noted, plaintiff contends that it is at least plausible that "policyholder" refers collectively to the named insureds and the listed drivers. We disagree. We acknowledge the maxim of construction on which plaintiff relies—that different words are presumed to have different meanings. It is noteworthy that, aside from the single reference to "NAMED INSURED(S)" on the first page of the policy declarations, that term does not appear anywhere else in the declarations, the policy itself, or the endorsement, just as the term "policyholder" does not appear in the policy declarations. The declarations appear to have been drafted separately from the policy itself and the endorsement, both of which are standard, preprinted forms. Although the confined use of the term "named insureds" is not dispositive, if both terms were used in any one of the portions of the overall policy, plaintiff's case for the application of that maxim might be stronger.

In all events, as we have previously noted, "we apply all maxims with restraint * * *." *Harris v. Warren Family Properties, LLC*, 207 Or App 732, 748, 143 P3d 548 (2006). To be plausible, a construction of a contract must be "sensible and reasonable." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985). Ultimately, we must construe the policy from the perspective of the "ordinary purchaser of insurance." *Totten*, 298 Or at 771. If the application of a particular maxim of construction leads to a result that is not sensible and reasonable from that perspective, we will not apply it.

In our view, the ordinary purchaser of insurance would not read the policy as allowing a person who is a listed driver but not a named insured to amend the policy by adding vehicles to it or to cancel the policy altogether. In short, we conclude that the only plausible construction of the policy is to read the word "policyholder" as referring to the named

insureds. It follows that the policy did not authorize Jillian to give permission to Barker and Franklin to use the car.

■     We turn to plaintiff's argument that, as a permissive user herself, Jillian was, as a matter of statutory law, able to give permission to Barker and Franklin. Under ORS 742.038, a policy that does not comply with the insurance code must be construed and applied in accordance with the code. Plaintiff urges us to construe Oregon's financial responsibility law (FRL) as adopting the "initial permission rule," under which any person given permission to use an insured motor vehicle may in turn, for purposes of insurance coverage, permit another person to use the vehicle, even if the named insured expressly told the initial borrower not to allow others to use it. In other words, in plaintiff's view, because Jillian had her parents' permission to use the car, her permission to Franklin extended insurance coverage to him and, subsequently, Franklin's permission to Barker extended coverage to him as well.

■ ■ We disagree. The specific provision in the FRL requiring coverage for permissive users is found in ORS 806.080(1)(b). To determine the legislature's intent in enacting that statute, we look first to its text in context. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The text of ORS 806.080(1)(b) provides that a liability insurance policy used to comply with statutory financial responsibility requirements "must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured under the policy, except for any person specifically excluded from coverage under ORS 742.450." As plaintiff notes, we have previously stated that "the overriding purpose of the FRL [is] to ensure that all motor vehicle accident victims are compensated for their injuries * * *." *Safeco Ins. Co. v. American Hardware Mutual Ins. Co.*, 169 Or App 405, 415, 9 P3d 749 (2000). We observed in that case, however, that ORS 806.080 does not mandate universal coverage. Indeed, it expressly provides that certain persons may be excluded from coverage. Thus, not *all* motor vehicle accident victims are compensated under the FRL.

Even if the overriding goal of the FRL were to provide universal coverage, the text of ORS 806.080(1)(b) simply

cannot be reconciled with that aim. The statute mandates coverage for all persons using an insured vehicle "with the consent of the named insured." When an initial borrower allows a third person to use a vehicle despite having been told by the named insured not to do so, the third person cannot be said to be using the vehicle with the consent of the named insured. Nothing else in the context of which we are aware undermines that conclusion. Accordingly, we cannot construe ORS 806.080(1)(b) as plaintiff urges.

As noted, the trial court concluded that the personal umbrella policy that defendant issued provided coverage that, other than the liability limits, was coextensive with the auto policy, a conclusion that defendant challenges. Because the result would be the same whether the court was correct or not, we need not express any opinion on that issue. It suffices to say that Barker and Franklin were not covered under the umbrella policy.

Because neither the auto policy nor the umbrella policy covered Barker and Franklin, the trial court correctly granted a directed verdict in defendant's favor. For that reason, we need not address plaintiff's second assignment of error, in which she challenges the court's directed verdict on the question whether Jillian actually gave Barker permission to use the car. It also follows that the court did not err in ruling that defendant did not have a duty to defendant Barker and Franklin, so we reject plaintiff's third assignment of error as well.

Affirmed on appeal and cross-appeal.