Argued and submitted May 21, 2009, affirmed June 16, 2010

## EMPLOYERS-SHOPMENS LOCAL 516 PENSION TRUST
and Western States Health and Welfare Trust Fund of the OPEIU,
*Plaintiffs-Appellants,*

*and*

## CORAL CONSTRUCTION COMPANY RESTATED EMPLOYEE PROFIT SHARING PLAN & TRUST,
*Plaintiff,*

*v.*

## TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
and Hartford Fire Insurance Company,
*Defendants-Respondents,*

*and*

## FIDELITY AND DEPOSIT COMPANY OF MARYLAND;
Willis of Oregon, Inc.;
and Marsh USA, Inc.,
*Defendants.*

Multnomah County Circuit Court
050201821; A137119

235 P3d 689

Michael E. Farnell argued the cause for appellants. With him on the briefs were Emily S. Miller and Parsons Farnell & Grein, LLP.

Carla Scott argued the cause for respondent Travelers Casualty and Surety Company of America. With her on the brief were G. Kevin Kiely and Cable Huston Benedict Haagensen & Lloyd LLP.

Thomas A. Larkin argued the cause for respondent Hartford Fire Insurance Company. With him on the brief were John Spencer Stewart, Tyler J. Storti, and Stewart Sokol & Gray, LLC.

Lisa T. Hunt, Michael R. Seidl, and Landye Bennett Blumstein LLP filed the brief *amicus curiae* for The Surety & Fidelity Association of America.

Dean P. Felton filed the brief *amicus curiae pro se*.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs, Employers-Shopmens Local 516 Pension Trust (Local 516) and Western States Health and Welfare Trust Fund of the OPEIU (Western), appeal a limited judgment, dismissing plaintiffs' breach of contract claim against defendants, Travelers Casualty and Surety Company of America (Travelers) and Hartford Fire Insurance Company (Hartford), after the trial court granted summary judgment in favor of both insurers.[1] At the core of this coverage dispute is the meaning of the term "employee" in both the "Welfare and Pension Plan ERISA Compliance" endorsement to the commercial crime policy that Travelers issued to Local 516 and the materially identical policy that Hartford issued to Western. Broadly stated, the legal issue on appeal is whether the principals of a company that provided investment management services to plaintiffs are "employees" under the definition in the endorsement. For reasons that we will explain, the trial court properly granted summary judgment in favor of both insurers. Accordingly, we affirm.

The material facts of this case are essentially procedural or undisputed. Local 516 and Western are trusts subject to the Employee Retirement Income Security Act of 1974 (ERISA). Local 516 obtained a commercial insurance policy from Travelers that included coverage for the loss of money and securities caused by "employee dishonesty," and Western obtained a materially identical policy from Hartford.[2] In those policies, "employee dishonesty" was defined to mean "only dishonest acts committed by an '*employee*' " under particular circumstances. (Emphasis added.)

Two interrelated policy definitions circumscribe the meaning of the term "employee." The first definition is general in nature and refers to natural persons in plaintiffs' service, who are compensated directly by plaintiffs, and who are

---

[1] Although another plaintiff and other defendants were involved in this case in the trial court, on appeal, "plaintiffs" refers to only Local 516 and Western and "defendants" refers to only Travelers and Hartford.

[2] Because the Hartford policy and the Travelers policy are substantively identical in all respects material to our analysis and disposition, we employ the terms "policy" and "endorsement" in this opinion to refer to either or both.

directed and controlled by plaintiffs while performing services for them.[3] The second definition is contained in the "Welfare and Pension Plan ERISA Compliance" endorsement. (Capitalization and boldface omitted.) Specifically, that endorsement provides, in part, that, "[i]n compliance with certain provisions of the Employee Retirement Income Security Act (ERISA)," an "employee" also includes a natural person who is "[a] trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor," of an ERISA plan. The terms used in that definition of "employee" (*i.e., trustee, officer, employee, administrator, manager*) are not specifically defined in the endorsement or in the policy as a whole.[4]

While that coverage was in effect, plaintiffs had agreements with Capital Consultants, LLC (CCL) to receive investment management services. The precise terms of plaintiffs' investment advisory agreements were not entirely identical. However, in general terms, both agreements authorized CCL to manage plaintiffs' designated funds. Specifically, Local 516's investment advisory agreement provided that

———

[3] Specifically, the general definition of "employee" in the Crime General Provisions of the policy defines "employee" to mean

"a. Any natural person:

"(1) While in your service (and for 30 days after termination of service); and

"(2) Whom you compensate directly by salary, wages or commissions; and

"(3) Whom you have the right to direct and control while performing services for you; * * *

"* * * * *

"But 'employee' does not mean any:

"(1) Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

"(2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee."

[4] Because the issue in this case concerns the definition of "employee" in the endorsement, which is defined, in part, to include the undefined term "employee," we adopt plaintiffs' stylistic convention so as to distinguish between those instances in which we refer to the definition and those instances in which we refer to the undefined terms as used in that definition—that is, when we refer to the definition of "employee," we enclose it in quotation marks and when we refer to the terms used in that definition (*i.e., trustee, officer, employee, administrator, manager*), we italicize them.

"[CCL], as it deems advisable, shall on behalf of [Local 516] cause securities to be bought and sold, invest in [CCL's] Insured, Cash and/or Cash-equivalent Collateralized Note Program, and shall cause all other functions necessary for investment management to be performed for the account." Similarly, Western's agreement provided, in part:

> "[Western] authorizes [CCL] to invest and reinvest the assets in the Portfolio on behalf of [Western]. [CCL's] authority includes the power to purchase, sell and exchange property, and exercise whatever rights are conferred upon the holder of property held in the Portfolio including (without limitation) the power to exercise rights, warrants, conversion privileges, redemption privileges, to tender securities pursuant to a tender offer and the like."

Then, in 2004, Local 516 and Western each filed a proof of loss with Travelers and Hartford, respectively, seeking coverage for multiple occurrences of "employee dishonesty" during the periods in which the policies were in force. Each plaintiff asserted that its losses were caused by certain of CCL's principals, each of whom was (1) "an employee of [CCL]" and (2) a "fiduciar[y] and/or handler[ ] of the Trust's assets" who was "therefore required to be bonded" under ERISA. Travelers and Hartford each denied coverage for the alleged losses.

Thereafter, plaintiffs filed a complaint, alleging several claims, including a claim for breach of contract, which is the only claim at issue on appeal. Ultimately, with regard to the breach of contract claim, plaintiffs and defendants filed cross-motions for summary judgment.[5] Those motions raised the same general legal issue—*viz.*, whether the policy provided coverage for the losses alleged to have been caused by CCL's principals.

For their part, plaintiffs contended that any losses caused by CCL's principals were covered under the policy for any of three independent reasons:

---

[5] Local 516 and Travelers filed their motions first. After the trial court resolved Travelers' motion, Western and Hartford filed their motions, essentially incorporating the arguments previously made by Travelers and Local 516, respectively. For that reason, in describing the parties' primary contentions, we do not separately address the specific position of each plaintiff and defendant.

*First*, plaintiffs contended that, to the extent that "employee" is defined in the "Welfare and Pension Plan ERISA Compliance" endorsement to include *trustees*, *officers*, *employees*, *administrators*, and *managers*, the endorsement "undeniably contemplates the statutory meanings of the terms used." More specifically, plaintiffs contended that the plain meanings of the terms used in the definition of "employee" are the meanings ascribed to those terms for purposes of ERISA and that, in light of ERISA's definitions, CCL's principals, as a matter of law, are either *employees* or *officers*. Accordingly, plaintiffs reasoned that CCL's principals are "employees" under the definition in the endorsement such that their acts are covered under the policy. Alternatively, plaintiffs reasoned that, at the least, their construction of the endorsement is reasonable and creates an ambiguity such that the policy must be construed against defendants—that is, the drafters—to provide the coverage plaintiffs seek.

*Second*, plaintiffs contended that, in the event and to the extent that CCL's principals are deemed to be *administrators* or *managers* (as opposed to *employees* or *officers*), as those terms are used in the definition of "employee" in the endorsement, the purported grant of coverage in the endorsement is illusory. According to plaintiffs, because *administrators* and *managers* who are in plaintiffs' service and under their direction and control are already covered by the policy's general definition of "employee," *see* 235 Or App at 577, the references to *administrators* and *managers* in the endorsement can be understood to expand coverage only if they refer to *administrators* and *managers* who are independent contractors. Based on that understanding, plaintiffs asserted that the independent contractor exclusion in the endorsement "gut[s] the grant of coverage" for *administrators* and *managers*. Accordingly, plaintiffs reasoned, any purported coverage is illusory such that the policy must be construed to afford coverage to plaintiffs "for losses caused by CCL's principals[ ] * * * irrespective of whether CCL's principals were independent contractors."

*Third*, plaintiffs contended that the doctrine of statutory incorporation compels coverage consistently with the reasoning in the Supreme Court's decision in *Rhone v. Louis*,

282 Or 693, 580 P2d 549 (1978), and our decision in *American States Ins. v. Super Spray Service*, 77 Or App 497, 713 P2d 682, *rev allowed*, 301 Or 78, *appeal dismissed by stipulation*, 301 Or 523 (1986) (*Super Spray*). Specifically, plaintiffs contended that, because ERISA requires that those who handle plan assets must be bonded and because plaintiffs purchased the policy to comply with that requirement, as a matter of Oregon law, statutory incorporation applies to require coverage that is "consistent with the coverage requirements of * * * ERISA, including coverage for losses dishonestly caused by its investment manager [(*i.e.*, CCL)], whose principals handled" plaintiffs' funds.

Conversely, defendants contended that they were entitled to summary judgment because, as a matter of law, the policy afforded no coverage for the acts of CCL and its principals. According to defendants, the definitions of "employee" expressly excluded coverage for independent contractors; thus, because CCL was an independent contractor, the policy afforded no coverage. Alternatively, defendants contended that, even if the court were to look at the definitions in the ERISA regulatory scheme to interpret the meanings of the terms in the definition of "employee" in the endorsement, "independent investment managers" such as CCL and its principals would be *administrators*, and not *employees* or *officers* as plaintiffs contended. Accordingly, defendants reasoned that "the very same regulations [plaintiffs] ask[ ] this Court to incorporate into the * * * [p]olicies to override the policy language establish that there is no coverage in any event."

Further, defendants contended that the coverage afforded by the definition of "employee" in the endorsement was not illusory because it expanded the general definition of "employee." Finally, defendants noted that plaintiffs' contention that the doctrine of statutory incorporation compels coverage had been "squarely rejected" by the Ninth Circuit in *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins.*, 104 F3d 258, 262, 263 (9th Cir 1996) (*Rosenbaum*), a case involving a materially identical policy issued by Hartford in which the court reasoned that ERISA "does not require that any bond be construed to cover all persons required to be bonded" and

that "the Hartford policy does not say that it provides all bonding of any kind required by ERISA."

The trial court granted defendants' motions for summary judgment and denied plaintiffs' as to the breach of contract claim.[6] The trial court reasoned that, as a matter of law, based on the plain language of the policy, CCL and its principals were independent contractor investment managers that are excluded from coverage. Further, relying on *Rosenbaum*, the court reasoned that the doctrine of statutory incorporation did not apply because "ERISA does not override express insurance policy language to require coverage of anyone who must be bonded under ERISA." Ultimately, the trial court entered a limited judgment dismissing plaintiffs' breach of contract claim against defendants.

Plaintiffs appeal, raising two assignments of error. In those assignments, plaintiffs challenge the trial court's rulings denying their motions for partial summary judgment and granting defendants' motions as to the breach of contract claim. On appeal, plaintiffs essentially renew, as do defendants, their contentions raised in the trial court.

■        "When there are cross-motions for summary judgment and the granting of one and denial of the other are both assigned as error, both are subject to review." *Farmers Ins. Exchange v. Crutchfield*, 200 Or App 146, 152-53, 113 P3d 972, *rev den*, 339 Or 609 (2005). Specifically, "we review the trial court's decision to determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as [a] matter of law." *Id.* at 152; *see also* ORCP 47 C. In light of that standard, we turn to the legal issue in this case—that is, whether CCL's principals were covered "employees" under the definition in the endorsement.[7]

---

[6] We note briefly that the judge who resolved Travelers' summary judgment motion was not the same judge who resolved Western's and Hartford's motions. Nevertheless, we simply refer to the trial court generically because in resolving Hartford's and Western's motions, the judge adopted the reasoning previously set forth in the earlier order.

[7] Although plaintiffs' complaint alleged that both CCL and its principals were covered "employees" as defined in the policies, the policies define an "employee" as a "natural person" who meets certain criteria. We understand that it is undisputed

Resolution of that broad issue requires that we address three subsidiary legal issues. First, in light of the parties' specific contentions, we must determine whether, as a matter of law, CCL's principals are *employees, officers,* or *administrators* as those terms are used in the definition of "employee" in the endorsement. Second, we must determine whether the grant of coverage to *administrators* and *managers* in the endorsement is illusory. Third, we must determine whether the doctrine of statutory incorporation compels coverage in these circumstances.

■■■ In addressing those issues, we are guided by the principles of interpretation that apply to insurance contracts. As we have previously recognized, "[i]nsurance policies are contractual in nature and are interpreted, for the most part, like any other business contract. Their interpretation is a question of law[.]" *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 502-03, 156 P3d 105, *rev den,* 343 Or 363 (2007) (footnote omitted). Our goal "in interpreting an insurance policy is to determine the intent of the parties as interpreted from the perspective of the ordinary purchaser of insurance." *North Pacific Ins. v. American Mfrs. Mutual Ins.*, 200 Or App 473, 478, 115 P3d 970 (2005) (citation and internal quotation marks omitted). In turn, the parties' intent

"is determined by a three-step process. The first step is to examine the text of the policy to determine whether it is ambiguous, that is, whether it is susceptible to more than one plausible interpretation. If it is not, the policy is interpreted in accordance with that unambiguous meaning. The text of the policy includes any definitions of disputed terms included in the policy; we must, in fact, construe the policy in accordance with any such definitions. Only if the policy does not define the terms in dispute do we invoke assumptions about 'ordinary meaning' and other aids to construction. If the text of the policy is ambiguous, we proceed to a second step, that is, to examine the disputed terms in the broader context of the policy as a whole. If—and only if—the ambiguity persists, we construe the policy against the drafter * * *."

that CCL is not a "natural person." Accordingly, CCL is not covered by the policies, and our discussion of the issues on appeal focuses on CCL's principals.

*Andres v. American Standard Ins. Co.*, 205 Or App 419, 423-24, 134 P3d 1061 (2006) (citations omitted); *see also Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-70, 836 P2d 703 (1992) (describing principles of interpretation that apply to insurance contracts).

With those interpretive principles in mind, we begin by addressing whether CCL's principals are *employees, officers,* or *administrators* as those terms are used in the endorsement. According to plaintiffs, the endorsement "expands the definition of 'employee' to fit the ERISA context," and, in doing so, it "lifts terms directly from ERISA's regulations ('administrator, officer, and employee') without redefining them, which means those regulatory policy terms are properly accorded their regulatory meanings." Based on that understanding, plaintiffs contend that, as a matter of law, CCL's principals were not *administrators*, because they were not designated as such in plaintiffs' plan and trust documents, and, instead, were necessarily *employees* or *officers*.

To resolve plaintiffs' contention, we return to the text of the endorsement. As previously described, the endorsement provides, in relevant part:

### "WELFARE AND PENSION PLAN ERISA COMPLIANCE

"\* \* \* \* \*

"In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

"1.   'Employee' also includes any natural person who is:

"a.   *A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor,* of any Employee Welfare or Pension Benefit Plan (hereafter called Plan) insured under this insurance, and

"b.   Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance."

(Capitalization and boldface in original; emphasis added.)

Although the term "employee" is defined, the terms that comprise the definition (*i.e., trustee, officer, employee, administrator, manager*) are not. Although we generally turn to dictionary definitions to determine the ordinary meanings of undefined terms,[8] in light of the subject matter of the endorsement here, doing so would be of limited usefulness.[9] Instead, we turn to the meaning of those terms for purposes of ERISA's bonding requirement. That is so because the text of the endorsement strongly suggests an intention that, at the very least, the pertinent provisions in the ERISA regulatory scheme provide context for understanding the meaning of those terms.

The endorsement is entitled "Welfare and Pension Plan *ERISA Compliance*." (Capitalization and boldface omitted; emphasis added.) Further, it explicitly indicates that the definition of "employee" was intended to be "[i]n compliance with *certain provisions*" of ERISA. (Emphasis added.) Finally, "employee" is defined by referencing natural persons who serve "any Employee Welfare or Pension Benefit Plan" in particular positions and the named insured's—that is, each plaintiff trust's—"director or trustee while that person is handling funds or other property" of the plan. In other words, the endorsement expands the general definition of "employee" in the policy to include natural persons who perform particular functions for ERISA plans, including those in the position of handling plan funds and property. Accordingly, viewing the text of the endorsement from the

---

[8] *See, e.g., Laird v. Allstate Ins. Co.*, 232 Or App 162, 170, 221 P3d 780 (2009) (turning to dictionary to determine ordinary meaning of terms); *Mutual of Enumclaw Ins. Co. v. Rohde*, 170 Or App 574, 579-80, 13 P3d 1006 (2000) (same).

[9] *See Webster's Third New Int'l Dictionary* 28 (unabridged ed 2002) (defining "administrator" to include "an officer that directs or superintends affairs (as of a business, school, or government agency)"); *id.* at 743 (defining "employee" to include "one employed by another usu. in a position below the executive level and usu. for wages"); *id.* at 1372 (defining "manager" to include "one that manages : a person that conducts, directs, or supervises something: as * * * a person whose work or profession is the management of a specified thing (as a business, an institution, or a particular phase or activity within a business or institution)"); *id.* at 1567 (defining "officer" to include "one who holds an office : one who is appointed or elected to serve in a position of trust, authority, or command esp. as specif. provided for by law ⟨-s of state⟩ ⟨~ in the foreign service⟩ ⟨~ of a bank⟩ ⟨the club held a meeting to elect its ~s for the year⟩—distinguished from *employee* and sometimes from *official*" (emphasis in original)); *id.* at 2457 (defining "trustee" to include "one to whom something is entrusted : one trusted to keep or administer something").

perspective of an "ordinary purchaser of insurance," it is clear that the definition of "employee" was informed, at least in part, by the ERISA regulatory scheme concerning the bonding of those who handle plan funds and property. For those reasons, we turn to the ERISA regulatory scheme to assist in interpreting the meanings of *employee*, *officer*, and *administrator* in the policy.

Generally, ERISA requires that "[e]very fiduciary of an employee benefit plan and every person who handles funds or other property of such a plan * * * shall be bonded as provided in this section[.]" 29 USC § 1112(a). For purposes of this case, our understanding is that there is no dispute that CCL's principals were required to be bonded under 29 USC section 1112(a).

For purposes of that bonding requirement, 29 CFR section 2580.412-3 defines three discrete categories of persons (*i.e.*, administrators, officers, employees) who must be bonded because of their formal or functional relationship to the ERISA plan. We describe each category in turn.

*First*, an "administrator" is "[t]he person or persons designated by the terms of the plan or the collective bargaining agreement with responsibility for the ultimate control, disposition, or management of the money received or contributed." 29 CFR § 2580.412-3(a)(1)(i). Alternatively, "[i]n the absence of such designation," an administrator is "the person or persons actually responsible for the control, disposition, or management of the money received or contributed, irrespective of whether such control, disposition, or management is exercised directly or through an agent or trustee designated by such person or persons." 29 CFR § 2580.412-3(a)(1)(ii).

*Second*, an " 'officer' shall include any person designated by the terms of a plan or collective bargaining agreement as an officer, any person performing or authorized to perform executive functions of the plan or any member of a board of trustees or similar governing body of a plan." 29 CFR § 2580.412-3(b). Further, the definition indicates that, "[i]n its most frequent application[,] the term will encompass those natural persons appointed or elected as officers of the

plan or as members of boards or committees performing executive or supervisory functions for the plan, *but who do not fall within the definition of administrator." Id.* (emphasis added).

> *Third,* an

> " 'employee' shall, *to the extent a person performs functions not falling within the definition of officer or administrator,* include any employee who performs work for or directly related to a covered plan, regardless of whether technically he is employed, directly or indirectly, by or for a plan, a plan administrator, a trust, or by an employee organization or employer * * *."

29 CFR § 2580.412-3(c) (emphasis added).

Significantly, although 29 CFR section 2580.412-3 specifically defines "administrator, officer, or employee" as described above, it also includes a provision that expressly expands the scope of those terms to include those who, as a practical matter, perform the functions normally performed by an "administrator, officer, or employee." Specifically, 29 CFR section 2580.412-3(d) provides:

> "*Other persons covered.* For purposes of the bonding provisions, *the terms 'administrator, officer, or employee' shall include any persons performing functions for the plan normally performed by administrators, officers, or employees of a plan.* As such, the terms shall include persons indirectly employed, or otherwise delegated, to perform such work for the plan, such as pension consultants and planners, and attorneys who perform 'handling' functions within the meaning of § 2580.412-6. On the other hand, the terms would not include those brokers or independent contractors who have contracted for the performance of functions which are not ordinarily carried out by the administrators, officers, or employees of a plan, such as securities, brokers who purchase and sell securities or armored motor vehicle companies."

(First emphasis in original; second emphasis added.)

■     Against that definitional backdrop, we address plaintiffs' specific contention that CCL's principals were *employees* or *officers* and were not *administrators*. That contention rests on the following syllogism:

> (a)   The terms *administrator, officer,* and *employee* in the definition of "employee" in the endorsement have the same

meaning as the meanings ascribed to those terms under ERISA.

(b) Here, CCL's principals are not administrators under ERISA because they were not designated as such in the plans.

(c) Consequently, CCL's principals are necessarily *employees* or *officers* as those terms are used in the definition of "employee" in the endorsement and their acts are covered under the policy.

To resolve plaintiffs' contention, we need not decide whether the terms *administrator, officer,* and *employee* in the definition of "employee" in the endorsement are properly afforded their pertinent meanings under ERISA or whether the ERISA definitions merely provide highly persuasive context for interpreting the meanings of those terms. That is so because, assuming without deciding that plaintiffs are correct that the meanings of the terms *administrator, officer,* and *employee* in the definition of "employee" in the endorsement are identical to the meanings of those terms for purposes of ERISA's bonding requirement, plaintiffs' assertion that CCL's principals are not administrators for purposes of ERISA's bonding requirements is incorrect.

Application of the ERISA definition of "administrator" in this case is relatively straightforward. Plaintiffs correctly note that CCL and its principals are not administrators under the terms of 29 CFR section 2580.412-3(a)(1)(i), because the plans do not designate them as such. Nonetheless, we understand that there is no dispute that CCL's principals "perform[ed] functions for the plan[s] normally performed by administrators"—that is, management of the plans' funds. 29 CFR § 2580.412-3(d). Accordingly, for purposes of ERISA's bonding requirements, CCL's principals are properly considered administrators under the terms of 29 CFR section 2580.412-3(d). As a consequence, plaintiffs' contention on appeal that CCL's principals are not *administrators* but necessarily must be *employees* or *officers* fails.

As noted, the endorsement at issue here explicitly excludes from the definition of covered "employee[s]," independent contractor administrators or managers. *See* 235 Or App at 583 (quoting policy language "except an administrator

or a manager who is an independent contractor"). Plaintiffs do not contend on appeal that the trial court's grant of defendants' summary judgment motions was erroneous because there were material factual disputes as to whether CCL's principals are independent contractors—and, thus, for purposes of our review that matter is resolved. Accordingly, we must affirm the trial court's disposition on the ground that CCL's principals were not "employees" because they were independent contractors excluded from coverage unless plaintiffs are correct in either of their additional, alternative challenges—*viz.*, that (1) the coverage for *administrators* was illusory in light of the exclusion for independent contractor administrators or (2) the application of the doctrine of statutory incorporation requires coverage.

■ We turn first to plaintiffs' contention that coverage for the acts of *administrators* and *managers* in the endorsement is illusory. More specifically, plaintiffs' contention rests on the following syllogism:

(a) *Administrators* and *managers* can be only common-law employees, trustees, or independent contractors—that is, all administrators or managers must stand in one of those relationships with their principals.

(b) *Administrators* and *managers* who are common-law employees are already covered under the policy's general definition of "employee" and *administrators* and *managers* who are *trustees* are explicitly covered under the endorsement's expanded definition of "employee."

(c) Accordingly, the reference to *administrators* and *managers* in the endorsement necessarily refers only to *administrators* and *managers* who are independent contractors.

(d) Thus, any coverage for an *administrator* or *manager* in the endorsement is illusory because the exclusion for *administrators* and *managers* who are independent contractors completely eviscerates such coverage.[10]

---

[10] Because there is no analytical distinction between the treatment of administrators and managers, to resolve plaintiffs' contentions on appeal, we need not consider the meaning of the term *manager*.

Assuming without deciding that plaintiffs are correct that *administrators* and *managers* can be only common-law employees, trustees, or independent contractors, the correctness of plaintiffs' position reduces to whether the reference to *administrators* and *managers* in the endorsement necessarily refers only to *administrators* and *managers* who are independent contractors. For reasons that we will explain, we conclude that the reference to *administrators* and *managers* is not so narrowly circumscribed.

As previously discussed, *see* 235 Or App at 584, the endorsement evinces an intent to expand the general definition of "employee" to include natural persons who perform particular functions for ERISA plans as informed by the ERISA bonding scheme generally and the pertinent definitions of "administrator," "officer," and "employee" specifically. For those reasons, in the context of the endorsement as a whole, the use of the term *administrator* indicates to an ordinary purchaser that an "employee" includes an *administrator* for purposes of ERISA, regardless of whether that person would be considered an "employee" under the general policy definition, unless, as unambiguously and expressly provided, the ERISA *administrator* is an independent contractor. Accordingly, because the premise underlying plaintiffs' syllogism is incorrect—that is, because plaintiffs are incorrect that the reference to *administrators* and *managers* in the endorsement is limited to *administrators* and *managers* who are independent contractors—their contention that coverage for *administrators* and *managers* is illusory fails.[11] Having so concluded, we turn to plaintiffs' final contention that the doctrine of statutory incorporation compels coverage.

[11] We note that the endorsement might be illusory as a whole if it failed to expand the scope of the general definition of "employee." *See Black's Law Dictionary* 370 (9th ed 2009) (defining "illusory contract" as "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation"). That, however, is not the case here. Although the general definition of "employee" clearly excludes coverage for the named insured's trustees and directors, *see* 235 Or App at 577 n 3, the endorsement clearly provides coverage for such persons to the extent that they are handling the plan's funds, *see* 235 Or App at 583. Further, if, as *amici* suggest, the named insured is not the plan, the endorsement clearly expands coverage to the named insured's trustees and directors as well as to persons performing particular functions for the plan.

■ With regard to that contention, plaintiffs assert that the "doctrine * * * overrides express policy language to read statutory requirements into insurance policies as if expressly written therein at inception." Relying on *Rhone* and *Super Spray*, plaintiffs assert that "statutory incorporation * * * applies when (1) the statute regulates what the insured must buy, and (2) the insured procures the policy to comply with the regulatory mandate." For reasons that we will explain, we disagree that, under the reasoning in *Rhone* and *Super Spray*, statutory incorporation applies to require coverage in this case.

In *Rhone*, the plaintiff was injured in an accident while a passenger in an automobile that he rented from an automobile rental business. 282 Or at 695. The business's insurance company contended that the pertinent policy "provided coverage on rented automobiles only when they were being driven by the rentee, i.e., plaintiff." *Id.* Plaintiff relied on a portion of a city ordinance that required automobile rental businesses to obtain liability insurance. *Id.* In particular, the ordinance provided:

> "* * * Where the insurance covers a drive-yourself vehicle, it shall expressly provide coverage during the time such vehicle is rented out and shall cover the liability of the driver of such vehicle whether or not such vehicle is retained beyond the expected time of return to the licensee."

*Id.* (internal quotation marks omitted).

The Supreme Court noted that, "[i]n a number of circumstances the requirements of statutes and ordinances have been deemed covered by insurance policies that were procured for the purpose of complying with those requirements, adding to or displacing contrary provisions of the policy itself." *Id.* at 695-96. However, the court did not "examine how far this rule extends, because [the insurance company] concedes both in its brief and on oral argument that it applies to its situation." *Id.* at 696. Instead, the insurance company asserted that the ordinance should be interpreted to require insurance for rentee-drivers and that the purpose of the ordinance supported its interpretation. *Id.* The court rejected the

insurance company's interpretation of the ordinance. *Id.* at 697.

In *Super Spray*, the defendants erroneously sprayed the wrong field with herbicide. 77 Or App at 499. When the landowner later planted a potato crop on that field, the herbicide destroyed the crop. *Id.* The plaintiff insurance company contended that the defendants' policy did not cover the damage because of an endorsement that stated "it did not cover 'property damage arising out of the direct application of chemicals, whether intentional or in error.'" *Id.* The defendants asserted, however, that a particular statute required coverage.[12] *Id.* at 500. Significantly, the defendants also relied on a policy provision which provided that " '[s]tatements in this policy conflicting with insurance statutes of [Oregon] are hereby amended by us to conform to the statutes.'" *Id.* (second brackets in original).

On appeal, "[t]he parties d[id] not dispute that defendants procured the policy for the purpose of complying with the requirements of ORS 634.116(5)." *Id.* The issue on appeal reduced to whether, although "plaintiff concede[d] that, under the provision just quoted, the policy provides the public liability coverage that the statute requires," the statute did not, in fact, require coverage. *Id.* We held that "[t]he statute require[d] that pesticide operators have insurance for damage to property from application of herbicides, except for damage to 'property being worked upon' by them" and that, "[b]ecause the policy is amended to conform to ORS 634.116, it insures against [the landowner's] loss, unless the 65-acre

---

[12] That statute was ORS 634.116(5), which, at the time, stated, in part:

" 'The department shall not issue or renew a pesticide operator's license until the applicant or licensee has furnished evidence to the department, in the form of a public liability policy issued by an insurance company qualified to do business in Oregon, protecting the applicant or licensee against liability for injury or death to persons and loss of or damage to property resulting from the application of pesticides, or in lieu of such insurance, has furnished a deposit of cash or negotiable securities acceptable to the department which may be applied by the department to the payment of damages resulting from such liability. However:

" '(a) * * * The financial responsibility required by this section shall not apply to damages or injury to crops, real or personal property being worked upon by the applicant.'"

*Super Spray*, 77 Or App at 500-01 (omission in *Super Spray*).

parcel was 'property being worked upon' by defendants," which it was not. *Id.* at 501.

*Rhone* and *Super Spray* are materially distinguishable from this case. First, unlike the insurer in *Rhone*, defendants here do not concede the applicability of the doctrine of statutory incorporation. Second, unlike in *Super Spray*, plaintiffs do not point us to policy language indicating that conflicting policy statements are amended to conform to ERISA.

Moreover, to the extent that similar language exists in the policy, we do not understand ERISA's bonding provision to require an insurance policy to cover all persons that must be bonded. In that regard, we find the court's reasoning in *Rosenbaum* concerning ERISA's requirements to be persuasive. The court in *Rosenbaum* reasoned that, although ERISA requires that certain persons must be bonded, the determination of what coverage is necessary under ERISA and the purchase of a compliant insurance policy are the responsibilities of the plan. 104 F3d at 263. Further, the court reasoned that ERISA "does not require that any bond be construed to cover all persons required to be bonded."[13] *Id.*

---

[13] In *Rosenbaum*, one of the plaintiffs created an ERISA plan for his corporation and invested the plan's funds through a property mortgage company that, in turn, was managed by Glickman. 104 F3d at 259-60. After the company failed, the plaintiffs sued its insurer, Hartford, which had issued an employee dishonesty policy with an ERISA endorsement that, in the pertinent respects, was materially identical to the policy at issue in this case. *Id.* at 260-61. The plaintiffs contended that, "because Mr. Glickman was required to be bonded, and the Hartford bond was designed to cover anyone who was required to be bonded, it covered Mr. Glickman." *Id.* at 262.

The court rejected the plaintiffs' contention by noting that

"the Hartford policy does not say that it provides all bonding of any kind required by ERISA. It says that the additional coverage of employees is 'in compliance with *certain* provisions of' ERISA. (emphasis added). Hartford's ERISA compliance endorsement does not bond everyone who must be bonded. *It bonds only those classes of persons it designates.*

"*This is so even if others must be bonded * * *.*"

*Id.* (first emphasis in original; second emphasis added). Ultimately, the court assumed that Glickman was required to be bonded and held that ERISA

"does not require that any bond be construed to cover all persons required to be bonded. It requires plan officials who receive, handle, disperse or exercise custody of plan money to be bonded. 29 U.S.C. § 1112(b) ('It shall be unlawful for any plan official to whom subsection (a) applies, to receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of any employee benefit plan without being bonded....'). The statute also prohibits

In other words, we understand the court to have reasoned that every policy that is issued for ERISA purposes does not necessarily cover every person who must be bonded regardless of the policy language. Accordingly, because the ERISA bonding provision does not require an insurance policy to cover every person who must be bonded, the doctrine of statutory incorporation does not apply to this case to compel coverage.[14]

In sum, we reject plaintiffs' contentions that (1) CCL's principals were not *administrators* but rather were *employees* or *officers* under the definition of "employee" in the endorsement such that as a matter of law their acts were covered; (2) any coverage for *administrators* and *managers* in the endorsement was illusory; and (3) the doctrine of statutory incorporation compels coverage in this case. Accordingly, for the reasons that we have explained, the trial court properly granted defendants' motions for summary judgment and denied plaintiffs'.

Affirmed.

---

plan officials from permitting any official who has not met the bonding requirements to receive, handle, disperse or control plan funds. *Id.* If Mr. Glickman had to be bonded, then perhaps the Rosenbaums as trustees should not have invested the ERISA plan's money with [the mortgage company] without ascertaining whether he was. They perhaps could have insured the plan against the risk that he might not be bonded as required by buying an 'agents rider' or coverage including persons in his position. The Rosenbaums could have invested their ERISA plan's money in a manner not requiring bonding, as by buying securities through a stockbroker. That they invested instead with [the mortgage company] does not imply that their bond on Dr. Rosenbaum's employees, trustees et al. covered [the mortgage company's] employees."

*Id.* at 263.

[14] Our determination that statutory incorporation does not apply to this case obviates any need to address plaintiffs' other contentions concerning statutory incorporation.